Dean T. Kirby, Jr.    Calif. Bar No. 090114
KIRBY & McGUINN, A P.C.
600 B Street, Suite 1950
San Diego, California 92101-4515
Telephone: (619) 685-4000  Facsimile:  (619) 685-4004

Michelle L. Abrams    Nev. Bar No. 5565
MICHELLE L. ABRAMS, LTD.
3085 South Jones Blvd., Suite C
Las Vegas, NV  89146
Telephone: (702) 369-3724  Facsimile (702) 369-0651

Attorneys for Defendants
Eagle Investment Partners, L.P. and Vindrauga Corporation

# UNITED STATES DISTRICT COURT

## District of Nevada

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY<br><div align="right">Debtor</div><br><br>In re:<br>USA CAPITAL REALTY ADVISORS, LLC<br><div align="right">Debtor</div><br><br>In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC<br><div align="right">Debtor</div><br><br>In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC<br><div align="right">Debtor</div><br><br>In re:<br>USA SECURITIES, LLC<br><div align="right">Debtor</div><br><br>COMPASS USA SPE LLC and<br>COMPASS FINANCIAL PARTNERS, LLC<br><div align="right">Plaintiffs</div><br><br>v.<br><br>EAGLE INVESTMENT PARTNERS, L.P. and<br>VINDRAUGA CORPORATION<br><div align="right">Defendants</div> | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11<br><br>Jointly Administered Under<br>**Case No. BK-S-06-10725 LBR**<br><br>**Adversary No. 07-01124 LBR**<br><br>**MOTION FOR WITHDRAWAL OF THE REFERENCE** |

The Motion of Defendants Eagle Investment Partners, L.P. and Vindrauga Corporation respectfully represents:

1. This Adversary Proceeding was commenced by the filing of a complaint in the Bankruptcy Court on August 7, 2007. The Complaint names two defendants:

    1.1 Eagle Investment Partners, a California limited partnership which was recently formed by a group of 61 investors holding beneficial interests in a first trust deed loan, originated by USA Commercial Mortgage Company ("USACM") and generally known as the "Fiesta Stoneridge" loan; and

    1.2 Vindrauga Corporation, a California corporation formed in 2002. Vindrauga is in the business of acquiring real and personal property as well as bank loans and restructuring or foreclosing on those loans. Vindrauga is an affiliate of Debt Acquisition Company of America V, LLC ("DACA"). DACA and its predecessor companies have been in the business of buying and selling distressed debt, including but not limited to bankruptcy claims, since 1994.

2. In January, 2007, DACA began to acquire the interests of certain trust deed investors in the Fiesta Stoneridge loan. DACA eventually acquired interests of 33 investors, comprising about 24% of the outstanding principal balance of the loan. DACA eventually banded together with 61 other investors in Fiesta Stoneridge to form Eagle. Today, Eagle accounts for 59% of the total beneficial interests in the Fiesta Stoneridge loan.

3. From its inception, the Fiesta Stoneridge loan has been serviced by USACM. Eagle believes that some, but not all, of the original investors in the Fiesta Stoneridge loan signed a form document titled "Loan Servicing Agreement." Eagle also believes that many of its limited partners did not sign the Loan Servicing Agreement.

4. DACA believes that in many respects, the Loan Servicing Agreement is inconsistent with the fiduciary duties owed by a mortgage broker to its principals under Nevada law. The most controversial provision of the Loan Servicing Agreement states that in addition to 1% - 3% of the loan proceeds collected by the servicing agent, the servicing agent's fee includes late charges and default interest collected on account of the loan. "Default interest" refers to the differential between interest at the initial rate provided for in the note and a much higher rate of interest which is imposed in the

1  event of a default. This differential, in the case of Fiesta Stoneridge, is 7% on the $10 Million principal

2  balance of the loan.

3       5.    This provision places the servicing agent in a direct conflict of interest with its principals.

4  On the one hand, it is in the interest of the investors to take immediate action when a loan becomes

5  delinquent, while the borrower still has equity to protect, and while there is still sufficient value in the

6  real property collateral to support a sale or refinancing to pay the loan. One the other hand, it may be

7  in the best interest of the servicing agent for a well-secured loan to remain delinquent for a long period

8  of time while default interest accrues for the benefit of the servicer.

9       6.    Although the Fiesta Stoneridge loan became delinquent in about July, 2004, USACM

10  took no action to initiate a foreclosure in order to collect the loan, either before or after it filed its

11  chapter 11 bankruptcy case in April, 2006. In February, 2007, pursuant to a confirmed chapter 11 plan,

12  Compass purchased the servicing rights of USACM in the Fiesta Stoneridge loan, along with whatever

13  right USACM has under the Loan Servicing Agreements to collect and retain default interest, late

14  charges and accrued servicing fees.

15       7.    During the USACM bankruptcy case, a group of trust deed investors retained a common

16  attorney and appeared and opposed the sale of the loan servicing rights to Compass. This group of

17  investors is known as the Lender Protection Group ("LPG"). Neither Eagle, Vindrauga or DACA were

18  ever members of the LPG. On May 21, 2007, a group of about fifty limited liability companies, formed

19  by members of the LPG to hold their beneficial interests in USACM loans, filed an action against

20  Compass and other defendants in the United States District Court for the District of Nevada, where is

21  is now pending as *3685 San Fernando Lenders, LLC, et al. v. Compass USA SPE, LLC, et al.,* Case No.

22  3:07-cv-00241-RCJ-VPC,(the "LPG Action"). The Complaint seeks damages based on allegations that

23  Compass had breached the Loan Servicing Agreement and violated its fiduciary duty to the investors.

24  A copy of that Complaint, without exhibits is attached as Exhibit A to the Request for Judicial Notice

25  submitted with this Motion (hereafter, "RJN").

26  / / /

27  / / /

28  / / /

---

8.      On May 25, 2007 Compass filed a Notice of Removal, purporting to remove the LPG Action to the Bankruptcy Court. Also on May 25, Compass filed in the Bankruptcy Court an "Emergency Motion . . . for Order  . . . Enforcing Confirmation Order and for Civil Contempt Sanctions" (the "Emergency Motion") (RJN Exh B, without Exhibits or supporting papers).    The Motion was not served on, and did not name, Eagle, Vindrauga or DACA.  The Motion alleged that Donna Cangelosi and Todd Hansen acting on behalf of LPG, had caused the LLCs to be formed and had, without advance notice to Compass, informed borrowers that a new servicing agent ("Lender 2 Lender, LLC" or "L2L," an entity formed by the LPG) had been appointed, and had advised borrowers to make all future payments to L2L.

9.      The relief requested in the Emergency Motion referred specifically to the LPG, L2L, Hansen, Cangelosi and "those acting in concert with them."  DACA, which at the time held beneficial interests in the Fiesta Stoneridge loan and other loans, but which was not a member of the LPG or any of the LLC's, was not named in the Emergency Motion.  Neither Eagle, DACA nor Vindrauga entered an appearance or participated in any proceedings relating to the Emergency Motion.  Neither Eagle, Vindrauga, nor DACA were ever served with any papers relating to the Emergency Motion, nor with any order entered in response to the Emergency Motion.  Counsel for DACA was, however, aware of the proceedings, listened to some but not all of the hearings on the Emergency Motion, and read papers including court orders entered on the Emergency Motion.

10.      Although the Emergency Motion did not request relief against Eagle, Vindrauga or DACA, or against any of the trust deed investors which were not members of the LPG, the Court entered a series of orders on the Emergency Motion (the "Emergency Orders"), which refer generally to "all loans" purchased by Compass from USACM, and which grant temporary stays of actions to replace Compass as the servicing agent.  A copy of the most recent in this series of orders, entered August 1, 2007, is attached as Exhibit C to the Request for Judicial Notice.  It is the position of Eagle, Vindrauga and DACA that these orders were not intended to apply to parties not named in the Emergency Motion, and that in any event the Emergency Orders had no injunctive effect as applied to them because they were not parties to the proceedings which resulted in these orders.  Compass takes the contrary view.

11.    On July 2, 2007, the Bankruptcy Court entered a memorandum opinion (RJN Exh D) finding that it had jurisdiction over the dispute, but also recommending that the reference be withdrawn. On July 3, 2007, the Bankruptcy Court entered a "Recommendation for Withdrawal of Reference Pursuant to 28 U.S.C. § 157(d)." (RJN Exh E)

12.    Also on July 3, 2007, a Motion For Withdrawal of the Reference was filed in the District Court in the LPG Action, which requested that the District Court "should enter and [sic] order, pursuant to which the reference is withdrawn as to all pending disputes between Movants and Compass . . .." (RJN Exh F) On July 16, 2007, Compass filed in the District Court a "Consent . . . to Withdrawal of the Reference." (RJN Exh G).

13.    Counsel for Eagle, et al. is informed that at a hearing held August 6, 2007, District Judge Jones ruled from the bench that the reference would be withdrawn as to the LPG Action and proceedings between Compass and LPG in relation to the Emergency Motion and Emergency Orders.  To the knowledge of counsel for Eagle, et al., no formal order for withdrawal of the reference has yet been entered.

14.    After purchasing the loan servicing rights in February, Compass had still taken no action by June, 2007 to initiate a foreclosure as to the Fiesta Stoneridge loan.  On June 22, 2007, Eagle caused its counsel to send a letter to counsel for Compass USA SPE LLC and Compass Financial Partners, LLC (Collectively, "Compass"). (Kirby Decl. Exh H)  The June 22 letter notifies Compass that Eagle had exercised its rights under the Loan Servicing Agreements and under Nevada law to designate a new loan servicer.  Vindrauga is the new servicer identified in the notice.  The letter further advises that Vindrauga would not notify the borrower of any change in the servicing agent, or take any action to enforce the loan, for a period of 30 days after the date of the letter.  That 30 day period was later extended by the parties to accommodate settlement discussions.  The 30 day period expired on August 6. However, Vindrauga and Eagle have agreed to continue to forbear from taking any action to notify the Borrower or enforce the loan documents until August 28, 2007, the day after a scheduled hearing in the United States District Court on the Motion of LPG for relief from the Emergency Orders.

/ / /

/ / /

15.     On August 7, 2007, Compass filed the Complaint commencing the above-captioned Adversary Proceeding (RJN Exh H).  The Complaint describes in detail the actions of Cangelosi and the LPG, in which Eagle and Vindrauga took no part, and then alleges that Eagle had made a "Nearly Identical Attempt" to replace Compass as loan servicer.  The Complaint seeks declaratory and injunctive relief as follows:

15.1     1st Claim for Relief for a "Declaratory Judgment . . . that EIP is enjoined from Replacing or Terminating Compass as Servicer of the Fiesta Stoneridge Loan By Virtue of the August 1 Order, Pending Further Order of the Court"  In other words, Compass seeks a determination that EIP was enjoined under the Emergency Orders along with the LPG, L2L, Cangelosi and Hansen.  This Claim for Relief is therefore directly related to the Emergency Motion, as to which the District Court has withdrawn the reference.

15.2     2d Claim for Relief for a "Declaratory Judgment . . . that EIP is bound by the terms of the Confirmation Order and Loan Servicing Agreements."  Compass's Emergency Motion (RJN Exh B) alleges that it is necessary in order to enforce the terms of the Confirmation Order and the Loan Servicing Agreements.

15.3     3d Claim for Relief for a "Declaratory Judgment . . . that EIP May Not Replace Compass . . . Solely Under NAC 645B.073."  This claim for relief seeks to adjudicate an issue raised in the LPG Action, viz., whether section 645B.073 of the Nevada Administrative Code gives trust deed investors the right to change servicing agents for any reason, and not just in cases where the servicing agent has broken the law or violated its loan servicing agreement (RJN Exh A p. 21 ll. 22-26.)

15.4     4th Claim for Relief for a "Declaratory Judgment . . . that EIP May Not Replace Compass . . . Without 30 Days Prior Notice."  This issue was raised by Compass in the Emergency Motion.  It is related to the question of whether the provisions of section 3 of the Loan Servicing Agreements, which implements Nevada Administrative Code section 645B.073, is related to section 8, which provides for termination of the Loan Servicing Agreements in the event of a breach by the servicing agent, upon 30 days notice.

///

15.5    5th & 6th Claims for Relief for a "Declaratory Judgment . . . that no cause existed for EIP to replace Compass . . . ."  In the June 22 letter, EIP cites two grounds as justifiying the replacement of Compass as servicing agent. The first was the delay in commencing foreclosure proceedings under the Fiesta Stoneridge loan. The second was the falure of Compass to obtain a Nevada mortgage loan broker's license. Both the issue of delay to commence foreclosure and the licensure issues are principal grounds raised in the LPG Action (RJN Exh A p. 24 ll. 8-12). The Emergency Motion also attempts to make a showing that Compass is not required to obtain a Nevada mortgage broker's license in order to act as the servicing agent under the Loan Servicing Agreements.

16.    It is therefore the case that all of the issues raised in this Adversary Proceeding are substantially related, if not indeed identical, to those raised in the LPG Action and in the Emergency Motion, as to which the reference has been withdrawn by the District Court.

17.    Pursuant to Federal Rule of Bankruptcy Procedure, Defendants hereby state that the claims for relief stated in the complaint are "non-core" and that they do not consent to the entry of final orders on non-core matters by the bankruptcy judge.

18.    At a status conference held in this action on August 9, 2007, Bankruptcy Judge Riegle authorized counsel for Defendants to represent in this motion that the Bankruptcy Court does not object to the withdrawal of the reference in this case.

WHEREFORE Defendants pray for relief on this Motion as follows:

19.    For an order withdrawing the reference of this adversary proceeding to the Bankruptcy Court, such that this Adversary Proceeding may be heard and determined by the United States District Court.

20.    For such other and further relief as this Court deems just.

DATE: August 15, 2007                      KIRBY & McQUINN, A P.C.


By: /s/ Dean T. Kirby, Jr.
Dean T. Kirby, Jr.
Attorneys for Defendants
Eagle Investment Partners, L.P.
and Vindruaga Corporation

MEMORANDUM OF POINTS AND AUTHORITIES

28 U.S.C. § 157(d) provides as follows:

> (d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

Defendants do not contend that the "mandatory" provision of the second sentence applies to this case. In that event, the decision to withdraw the reference is a matter of discretion for the District Court. The governing authority in the Ninth Circuit is *Security Farms v. International Broth. of Teamsters,* 124 F.3d 999, 1008-09 (9th Cir. 1997), which states that "[i]n determining whether cause exists, a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors. See *In re Orion Pictures Corp.,* 4 F.3d 1095, 1101 (2d Cir.1993)."

In this case, judicial economy was furthered by withdrawing the reference as to this adversary proceeding because of the presence of many non-core issues. Judge Riegle's memorandum opinion (RJN Exh D p. 11 ll. 12-24), recommending that the reference be withdrawn as to the LPG Action and proceedings on the Emergency Motion states:

> As stated above, unless the parties consent, this court cannot enter final orders with respect to non-core matters. The issues implicated in this include matters over which this court has only supplemental jurisdiction as well as matters which are within the court's jurisdiction under § 1334, but are non-core under § 157. Hence, the court would be in the position of making only findings and recommendations as to some matters. The issues here are inextricably intertwined, and to attempt to delineate the matters and/or bifurcate hearings would constitute a waste of judicial resources.

> The court cannot enforce the provisions of the plan without determining whether or not the contracts were validly terminated. Furthermore, this court cannot enforce the provisions of the plan without determining whether Compass is applying the monies received in accordance with the provisions of the notes and deeds of trust and loan servicing agreements.

> Accordingly, this court believes that the most expeditious way of proceeding is for the District Court to withdraw the reference.

/ / /

Compass USA SPE LLC, et al. v. Eagle Investment Partners, L.P., et al.
Motion for Withdrawal of the Reference

Case No. 07-01124-LBR
Page No. 8

1    The issues raised in the complaint raise the same, interrelated core and non-core issues that

2  Judge Riegle found to be present in the LPG proceedings.  For example, the 4th, 5th and 6th Claims for

3  Relief  all request that the Court interpret and enforce the Loan Servicing Agreement as it applies to

4  investors' termination rights and Compass' performance as servicing agent post-sale and post- plan

5  confirmation.         Because the reference has already been withdrawn as to the LPG Action and the

6  Emergency Motion, withdrawal of the reference here is even more clearly called for.  If the reference

7  were not withdrawn in this action, then the Bankruptcy Court would be deciding many of the same

8  issues as the District Court, some in the form of recommendations for the entry of final judgment, and

9  some not.  The risk of inconsistent findings would exist.  This would not promote the "uniformity of

10  bankrutpcy administration" which the Ninth Circuit spoke of in the Security Farms case.

11    Defendants have thusfar cooperated in voluntarily forbearing to take any action to effectuate the

12  change in loan servicer by notifying the borrower of a change in servicer or taking steps to enforce the

13  loan.  Defendants are willing to continue to cooperate in order to accommodate the transfer of this

14  proceeding to the District Court, where Plaintiffs' motion for a preliminary injunction should properly

15  be heard.

16

17  DATE: August 15, 2007                              KIRBY & McGUINN, A P.C.

18

19                                                     By: /s/ Dean T. Kirby, Jr.
                                                       Dean T. Kirby, Jr.
20                                                     Attorneys for Defendants
                                                       Eagle Investment Partners, L.P.
21                                                     and Vindruaga Corporation

22

23

24

25

26

27

28